## Case No. 13,337.

### STEARNS v. BARRETT.

[1 Mason, 153;[1] 1 Robb, Pat. Cas. 97.]

Circuit Court, D. Massachusetts. Oct. Term, 1816.

PATENT — PROCEEDINGS TO REPEAL — VERDICT — WRIT OF ERROR — BURDEN OF PROOF.

1. The proceedings under the 10th section of the patent act of 21st of February, 1793, c. 11 [1 Stat. 323], are in the nature of a scire facias at the common law, to repeal a patent.
[Cited in Wood v. Williams, Case No. 17,-968; Union Paper-Bag Mach. Co. v. Crane, Id. 14,388.]

2. Upon a judgment rendered on such a suit, error lies to the circuit court.

3. A verdict, which is repugnant or uncertain in a material point, is void.
[Cited in Delaware, L. & W. R. Co. v. Toffey, 38 N. J. Law, 528; Hewson v. Saffin, 7 Ohio, pt. 2, p. 234. Cited in brief in Baldwin v. Doubleday, 59 Vt. 10, 8 Atl. 576.]

4. The refusal of a court to amend a verdict is not matter, which can be assigned for error.

5. Upon a trial under the general issue, under the 10th section of the patent act, the burden of proof, that the patent was obtained surreptitously or upon false suggestion, lies on the plaintiff.
[Followed in Delano v. Scott, Case No. 3,753.]

6. If a patent has been obtained by the plaintiff, upon the defendant's refusal to submit to an arbitration, according to the provisions of the 9th section of the patent act, and the defendant subsequently obtain a patent for the same invention, this is not conclusive proof, that the latter was obtained surreptitiously or upon false suggestion.

[7. Cited in U. S. v. White, Case No. 16,675, to the point that if the jury find the point in issue, and also another matter out of the issue, the latter finding is void, and may be rejected as surplusage.]

[In error to the district court of the United States for the district of Massachusetts.]

This was a proceeding in the district court, under the 10th section of the act of the 21st of February, 1793 (chapter 11), to repeal a patent-right, granted to the defendant upon the allegation, that it was obtained surreptitiously and upon false suggestion. Upon a motion, supported by affidavit, a rule to show cause, why process should not issue to repeal the letters patent, was granted; upon the return of which the district court, after hearing the parties, made the rule absolute; and process was ordered by the court to issue against the defendant, to show cause why the letters patent should not be repealed; and it was further ordered, that the applicant should file his allegations with due specifications. A further allegation, with specifications, was accordingly filed, by way of amendment of the original complaint, and

1 [Reported by William P. Mason, Esq.]

thereupon the said process duly issued. The original affidavit alleged, that the letters patent were obtained surreptitiously and upon false suggestion; and that the plaintiff was the true and original inventor of the machines in controversy. The amended complaint alleged, that the machines described in the letters patent to the defendant, "were not invented by him, but by another." And after specifying, under a videlicet, the particulars of the invention, and alleging, that they were not invented by the defendant, concluded by alleging, "that the same machines, in all respects, in which they are new, are and were of the invention of another; and were known, and secured by patent, previously, to the complainant, as in and by his specification or affidavit originally filed, to which this is an amendment and addition, is alleged." Upon the return of the process, the defendant duly appeared and filed the following plea and answer. "And now the said William Barrett comes and defends, &c. when, &c., and for cause, why the said letters patent should not be repealed, saith, that his letters patent were not upon false suggestion or surreptitiously obtained, in manner and form as set forth in the writ of said Abner Stearns; but that the said new and useful improvement, for which his said letters patent issued, as in said complaint is set forth, was invented by him, the said Barrett, in manner and form as he, in his former answer to the first complaint of said Stearns, hath alleged, and thereof he puts himself upon the country." And the plaintiff put himself, as to this issue, upon the country likewise.

The issue, so joined by the parties, was tried by a jury, who returned the following verdict: "The jury agree, that the plaintiff and defendant were both concerned in the invention of the reel, or machine, for dyeing all kinds of woven and silk goods, and a frame for finishing the same. They find, that the plaintiff has not supported his allegations, and therefore find a verdict for the defendant." Upon this verdict a judgment was rendered by the court, by consent of the parties, for the defendant. At the trial, a bill of exceptions was taken by the plaintiff to the charge of the court. The bill of exceptions stated, at large and in hæc verba, the testimony of all the witnesses on each side, and all the other evidence introduced by the parties. It then stated the points insisted upon by the counsel, and then the charge of the court upon these points as follows: "Whereupon the said counsel for the complainant insisted then and there before the said hon. judge, on the behalf of the said Stearns, that the said several matters, so produced and given in evidence on the part of the said complainant as aforesaid, were sufficient, and ought to be admitted and allowed as decisive evidence, that the said Barrett had surreptitiously obtained his said patent, and was not the inventor of all

the essential parts of the said machines. The said counsel particularly insisted, that the refusal of the said Barrett, in the manner disclosed in the evidence aforesaid, to appoint an arbitrator on his part, in compliance with the requirement of the law of the United States, in such case provided, and his, the said Barrett's obtaining his said patent afterwards, in the manner disclosed in the evidence aforesaid, was contrary to the statute in such case; and thereupon the said counsel for the complainant prayed of the said hon. judge to admit and allow the said matters so as aforesaid produced and given in evidence to be conclusive evidence, that the said patent of the said Barrett was obtained surreptitiously. The counsel for the complainant farther insisted, that, as to the invention of the said machines, it was incumbent on the complainant to produce only general evidence to show, that said Barrett was not the inventor; and that the burden of evidence thereupon devolved on the respondent; and it became incumbent on him to prove, that he, the said respondent, was the sole and exclusive inventor of all, and every essential part of the said machines respectively, as set out and described in his specification; and thereupon the said counsel prayed the hon. judge to admit and allow the evidence aforesaid to be conclusive, that the patent of the said Barrett was obtained upon false suggestion, and to instruct and direct the jury, that unless the said Barrett had proved, beyond a reasonable doubt, that he was the sole and exclusive inventor of all the essential parts of the machines aforesaid, described in his specification, and stated in his patent, that they, said jurors of the jury aforesaid, should return a verdict for the complainant. But to this the counsel for the respondent, on his behalf, did then and there insist before the said hon. judge, that the matters and evidence aforesaid, so produced and proved as aforesaid, did not amount to, nor ought to be held to be, conclusive evidence against the said Barrett to prove, that his patent aforesaid was obtained surreptitiously or upon false suggestion as aforesaid.

"And the said hon. judge did then and there declare and deliver his opinion to the jury aforesaid, as follows, namely: As to the first point the judge directed the jury, that though it should appear to them from the evidence, that there were conflicting claims for a patent by the respective parties, at the office of the secretary of state, and that a reference was recommended or directed, and that said Stearns did offer to refer such conflicting claims of himself and said Barrett to arbitrators, to be appointed according to the provisions of the law in such case, and named an arbitrator or referee on his behalf, and gave notice thereof to said Barrett; and though said Barrett should have refused, on his part, to appoint an arbitrator or referee, and afterwards a patent was issued to Stearns, and, subsequent to the date of said Stearns' patent, one was issued to said Barrett, as appears in evidence from their respective dates; yet that these circumstances alone would not constitute an obtainment of the patent surreptitiously, or on false suggestion, on the part of said Barrett, within the true intent and meaning of the statute; and that other evidence besides that, which should establish those facts and circumstances, would be necessary to support the charge of obtaining the patent surreptitiously or by false suggestion. And in regard to the second point, the said hon. judge directed the jury, that the burden of proof lay upon the complainant to support his allegations, in order to maintain the issue joined; and that as to the question, who was the true inventor of the machines, it was incumbent on the complainant to satisfy the jury, beyond a reasonable doubt, that said Barrett was not the true inventor of said machine or improvement, or of some essential part of it, to maintain that alleged ground for vacating the respondent's patent. That the objection, that this was requiring the complainant to prove a negative, was not applicable to this direction; for the complainant might prove the proposition contended for, by proving that another person, besides Barrett, was the inventor; and as there appeared no allegation nor evidence in the cause, nor was it contended by either party, that any other, besides Stearns and Barrett, was the inventor of said machine, it would follow, that unless Stearns should have satisfied the jury, that he was the inventor of the machine, or some material part of it, they must find a verdict for the respondent; and with this direction, the said hon. judge left the cause to the jury."

The following points were now made by G. Sullivan, for plaintiff in error: 1st. That by the finding of the jury, the fact was expressly established, that the respondent was not the sole inventor of any essential part of either of the machines, for which he obtained a patent; and the conclusion of the verdict in favor of the respondent was therefore repugnant to this finding, and contrary to law. 2dly. That the hon. judge ought to have amended and worked said verdict into form, and thereupon entered judgment for the complainant, or have rejected it, and awarded a venire de novo. 3dly. That the hon. judge directed and decided, that it was incumbent on the complainant to prove a negative proposition, viz. that the respondent was not the inventor of the essential parts of said machines, whereas the respondent ought to have been held to prove, that he was the inventor. 4thly. That the hon. judge directed and decided, that the obtainment, by the respondent, of his said patent, was not surreptitious, although obtained in the manner apparent on the record, viz. after a patent, for the same invention, had been is-

sued to another, upon the refusal of the respondent to submit to arbitration, as required by the ninth section of the patent law. 5thly. That the answer of said respondent, under oath, was read to the jury in evidence.

Under the first point it was contended, that whenever a patentee had obtained a patent upon a specification broader than his invention, the patent was void. As when a patent was obtained for the whole of a machine, and the patentee had invented only an improvement. Woodcock v. Parker [Case No. 17,971]. So where the specification imperfectly discloses the mode of producing the effect; or specifies an effect, which the means specified will not produce, the patent is void. Turner v. Winter, 1 Term R. 602; Rowntree's Case. Fessen. Pat. 151. And if the patent obtained really covers the invention of another, it is void. Tenant's Case, Fessen. Pat. 152.

Under the second point it was contended, that it was within the power of a court to amend a verdict. And that this might be done by the plea-roll, issue, notes of the judge, minutes of counsel, or affidavit of facts, proved at the trial. Goodtitle v. Otway, 8 East, 357; Doe v. Perkins, 3 Term R. 749; Petrie v. Hannay, Id. 659; President, etc., of Highland Turnpike Co. v. M'Kean, 11 Johns. 100, 101; Grant v. Astle, 2 Doug. 723. As where the jury find a fact, of which there was no evidence. Manners v. Postan, 3 Bos. & P. 343. Where the jury use technical terms, in an improper manner. Chester v. Willan, 2 Saund. 97. Where the jury undertake to collect the contents of a deed, and find the deed in hæc verba, the court will not regard the jury's finding of the contents, but will look to the deed. Rowe v. Huntington, Vaughan, 77. Where the jury undertake to find the costs for either party, of which the law disposes, the court will not regard the finding. Greene v. Cole, 2 Saund. 257. Where the jury find the plaintiff was disseised nisi the words contained in a will conveyed a good estate; the court held, that the verdict was perfect without the nisi, and so entered for the plaintiff. West v. Monson, Cro. Eliz. 480. Where the jury find, that the defendant did not promise, &c. nevertheless if two witnesses are to be believed, and they think they are, they find the verdict for the plaintiff; it was held a good verdict for the defendant. Sir Rowland Heyward's Case, 3 Dyer, 372. Where the jury find the facts at large, and further conclude against law, the conclusion is ill, and the verdict will be amended according to the facts found. Dyer, 106, 20; Plowd. 114; Priddle's Case, 11 Coke, 10. Where the jury bring in a verdict, and there is surplusage, the court will reject the surplusage. 11 Mod. 64. Where the jury find any thing out of the issue, such a verdict, for so much, is void, although it conclude in general for or against the plaintiff or defendant. And the rule, by which the court shall amend verdicts, is the true legal intent

and meaning of the jury, if such may be collected from the verdict. Foster v. Jackson, Hob. 54; Hawks v. Crofton, 2 Burrows, 699; Doe v. Perkins, 3 Term R. 749; Rees v. Morgan, Id. 349; Walker v. Gibbs, 2 Dall. [2 U. S.] 211, 212. It was then contended, that the verdict in the case before the court, was, in substance, a sufficient and distinct answer to the issue, and defective only in form; and that the judge should, therefore, have amended it, or, since the verdict was no part of the record, have entered up judgment for the plaintiff, without amending it.

Under the third point, it was contended, that a scire facias was a summary remedy, in the nature of a quo warranto; and was sustained at common law, where the subjects were injured by a patent, in order to avoid a multiplicity of suits. That in a quo warranto, the respondent must set out his whole title at length, and that the affirmation necessarily devolved upon the respondent, by the whole course of the pleadings; that this process was in the nature of a quo warranto, and the whole course of proceedings was the same.

Under the fourth point, it was contended, that by the ninth section of the patent law, the legislature had prescribed a mode for the adjustment of interfering applications by a reference; and that if an applicant, refusing to submit to such reference, was permitted still to obtain a patent, all the advantages to be derived from a patent, which was that of an exclusive privilege, would be lost to the other patentee.

Under the fifth point it was contended, that to permit the answer of the respondent on oath to be read to the jury in evidence, was contrary to the course of proceedings in a quo warranto, and was not, therefore, allowable in this case.

Bigelow and Gorham, for defendants, contended that a writ of error would not lie in this case, because the process was not according to the course of the common law. Hunt v. Coffin, 2 Dyer, 197; Melvin v. Bridge, 3 Mass. 305; Pratt v. Hall, 4 Mass. 241; Edgar v. Dodge, 4 Mass. 671. That if it were according to the course of the common law, it would be necessary for the complainant to allege himself to be the first patentee, and to set out his right at length, which the complainant, in this case, had not done. That the burden of proof was on the complainant, and he must show, that the patent of the defendant was obtained surreptitiously and upon false suggestion; the patent obtained by the defendant being, in itself, primâ facie evidence of his right. That the writ of scire facias was a judicial writ founded upon a record; but that, in this case, there was no record to found the process upon, the district court not being the repository of the records of patents; and no process of this kind could have issued from that court, had not a special power been given to it by the patent law.

That the proper mode of procedure would have been by a certiorari, which being a writ of favor, the truth of the facts and the merits of the case would have been examined under it.

It was further contended, that the finding of the jury in this case was not, that this was a joint invention of the plaintiff and defendant, but only, that both of them were concerned in it; similar to the case of the invention of a machine by two men without either's knowing of the invention of the other; in which case it could not by any means be said, that the patent of the last inventor was obtained surreptitiously. If, therefore, the finding of the jury could by any means be made consistent, the court would make it so.

STORY, Circuit Justice. The first question is, whether this court has appellate jurisdiction from a judgment, rendered by the district court in proceedings under the tenth section of the patent act.

Before considering this question, it will be necessary to settle the true nature and character of the proceeding itself. It is not easy to give a construction to the tenth section of the act, that is entirely free from difficulties. It provides, in substance, that, upon oath or affirmation being made before the judge of the district court, that any patent was obtained surreptitiously, or upon false suggestion, and motion made to the said court within three years after issuing the patent, it shall be lawful for the said judge, if the matter alleged shall appear to him sufficient, to grant a rule, that the patentee, or the executor, &c., show cause, why process should not issue against him to repeal such patent; and if sufficient cause shall not be shown to the contrary, the rule shall be made absolute; and thereupon the said judge shall order process to be issued against such patentee, or his executors. &c.. with costs of suit. And in case no sufficient cause shall be shown to the contrary; or if it shall appear, that the patentee was not the true inventor or discoverer; judgment shall be rendered by such court for the repeal of such patent. And if the party, at whose complaint the process issued, shall have judgment given against him, he shall pay all such costs as the defendant shall be put to in defending the suit, to be taxed against him by the court, and recovered in the due course of law.

The proceeding is evidently of a peculiar nature. It begins by a rule to show cause, which is commonly called a rule nisi, and if no sufficient cause be shown to the contrary, the rule is to be made absolute. For what purpose is it to be made absolute? Clearly, as the act declares, that process may issue against the patentee to repeal the patent; and the section proceeds to direct, that such process shall be issued against the patentee, with costs of suit. If the section had stopped here, there could have been little room for doubt; and it would, probably, have been judicially held, that the hearing upon the rule was decisive, and final between the parties; and that if the rule was made absolute, the patent would be in effect repealed; and the issuing of process would be in the nature of an execution to enforce, or make known, the judgment of the court. The proceedings would, in this view, bear a strong analogy to the summary proceedings under the statute of 17 Geo. III. c. 25, to set aside an annuity and cancel the bond, or other assurance, granting the same. 1 Tidd, Prac. (4th Ed.) 436. In aid of this construction of the tenth section of the patent act, it is material to observe, that, by its terms, the process is to be issued to repeal the patent, and not to show cause, why it should not be repealed; and the process is also to enforce a payment of the "costs of suit," which seems to suppose, that the suit is then concluded. But it has been supposed, that the subsequent clauses of the tenth section contemplate the process to be issued as me. .lv interlocutory process, to bring the party into court to show cause, why the patent should not be repealed; and that, upon the pleadings upon such process. the merits of the application are to be discussed and decided. And the clause, that "in case no sufficient cause shall be shown to the contrary, or if it shall appear that the patentee was not the true inventor or discoverer, judgment shall be rendered by such court for the repeal of such patent," is supposed particularly to apply to those ulterior proceedings. In fact, the process is thus deemed, to all intents and purposes, a scire facias at the common law to repeal a patent.

There is certainly great force in the argument in support of this view of the process, although some differences must be admitted to exist between it and a scire facias at the common law to repeal a patent. In the first place, a scire facias is a judicial process, issuing upon some record already enrolled in the court. It either issues out of chancery, where the patent itself is recorded, or from some other court, where a forfeiture or other cause of repeal appears by office, or other matter upon record, in the same court. King v. Butler, 3 Lev. 220, 2 Vent. 344; 4 Inst. 72; 2 Saund. 72, p. 9, in note; 1 Tidd, Prac. (4th Ed.) 966. And the patent itself, or an inquisition. which finds a patent and a cause of forfeiture, is a sufficient record to authorize the issuing of the scire facias. Lev. 220; Com. Dig. "Patent," F 7; Dyer, 197, etc. In this respect, the process from the district court is different. That court is not the depository of the records of patents; but they are recorded in the office of the secretary of state; and, if the present argument be right, the process is not founded upon any judgment of the court, ascertaining a forfeiture or ground of repeal. In the next place, a scire facias is a process altogether confined to the crown, with the exception of the single case, where two patents have issued for

the same thing; in which case, the prior patentee may maintain a scire facias to repeal the second patent. Dyer, 198, 6; 2 Saund. 72, 8, note; Com. Dig. "Patent," F 2, F 3. But see 6 Mod. 229. But, under our patent act, any person, whether a patentee or not, may apply for the repeal. There are other differences, which it is not now necessary to enumerate.

After considerable hesitation, I have come to the conclusion, that the proceedings upon the rule nisi are not conclusive; and that the process, to be awarded upon making the rule absolute, is not a final process, but a judicial writ in the nature of a scire facias at the common law. In this view, the preliminary proceedings are analogous to those on a rule for an information in the nature of a quo warranto under the English statutes. See Rex v. Dawes, 4 Burrows, 2022; Rex v. Dawes. Id. 2120; Rex v. Peacock, 4 Term R. 684. Upon this construction all the words of the statute have a natural connexion and distinct meaning, referring to the progressive order of the proceedings. The process is called in the statute a process to repeal the patent, merely as a description of its nature and use; and not because it necessarily and absolutely, per se, repeals the patent; in the same manner as a scire facias at common law, though, in fact, always a process to show cause, is generally denominated a scire facias to repeal a patent. Dyer, 179b, 198a; Lil. Ent. 411; 2 Saund. 72p. note. Nor does the addition of the words in the statute, "with the costs of suit," at all impugn this construction; for the process is then to show cause, why the patent should not be repealed, with costs of suit. In confirmation of this construction it may be remarked, that in the correspondent section of the patent act of 10th of April, 1790, c. 7 [1 Stat. 109], the clause as to the costs of suit is omitted; which clearly shows, that these words ought not to change the ordinary construction of the context. The subsequent language of the section, that "in case no sufficient cause shall be shown to the contrary, or if it shall appear, that the patentee was not the true inventor or discoverer, judgment shall be rendered by such court for the repeal of such patent," manifestly contemplates some proceedings after the process is issued, by which certain facts may be judicially determined, which are to be the proper foundation of a judgment. It is also of very considerable weight, that this has been, as far as we can obtain information, the practical exposition of the statute. It is consonant to the rules of the common law, which have generally been consulted and followed in all our laws and proceedings, to which they bear any relation; and it preserves the trial by jury, which the judicial act (Act Sept. 24, 1789, c. 20, § 9 [1 Stat. 76]) declares shall be the mode of trial of all issues of fact in the district court, in all causes except civil causes of admiralty and maritime jurisdiction. Whether a more convenient, as well as a more effectual remedy, might not have been obtained by a bill in equity, to set aside a patent for fraud or imposition, it is not the province of a judicial tribunal to consider or decide. See Attorney General v. Vernon, 1 Vern. 277, 280.

It being then ascertained, that this is a proceeding in the nature of a scire facias at the common law, the next inquiry is, whether this court has appellate jurisdiction from the judgment rendered therein by the district court. If this point were to be decided by a mere reference to the common law, no difficulty could arise; for, upon a judgment on a scire facias, it is very clear, that error lies. 2 Tidd. Prac. 966. 1028; Com. Dig. "Pleader," 3 B. 7. But the appellate jurisdiction of the circuit court depends altogether upon the positive provisions of our own statutes. It is not a court, originating in the common law, whose jurisdiction is to be ascertained by immemorial usage. The judicial act of 1789 (chapter 20, § 22) gives appellate jurisdiction to this court from all final decrees of the district court in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds 300 dollars; and from all final decrees and judgments, "in civil actions," where the matter in dispute exceeds 50 dollars. The act of 3d March, 1803, c. 93, § 2 [2 Story's Laws, 905; 2 Stat. 244], allows an appeal to this court from all final judgments or decrees of the district court, where the matter in dispute exceeds 50 dollars. Whether this last statute applies to any but causes of admiralty and maritime jurisdiction, is questionable (U. S. v. Wonson [Case No. 16,750]), and need not now be considered; for this process comes completely within the description of a "civil action." A scire facias is a judicial writ; and yet it is held to be an action, because the defendant may appear and plead thereto. Co. Litt. 290, 6, 291, a; Pulteney v. Townson, 2 W. Bl. 1227; Grey v. Jones, 2 Wils. 251; Fenner v. Evans, 1 Term R. 267; Winter v. Kretchman, 2 Term R. 45; 2 Tidd. Prac. (4th Ed.) 966. And for precisely the same reason this process must be deemed an action; and it is clearly a civil, as contradistinguished from a criminal, action. A writ of error, therefore, well lies, if the matter in dispute exceeds the stipulated value. It is conceded by the counsel on both sides, that the patent right is of a far greater value; and, as it judicially appears upon the record, that each of the parties claims the invention as his own, each has a matter in controversy sufficient in value to sustain the jurisdiction. It is not necessary to decide, whether, if the plaintiff had been a mere stranger, claiming no title to the invention, he could have brought a writ of error from the judgment of the district court. The difficulty in such a case would have been, how to estimate the value, which the plaintiff could have in the controversy. On this point no opinion is intended to be given.

The appellate jurisdiction in this court be-

ing established, we may now pass to the consideration of the other questions arising in the cause. It is deeply to be regretted, that the proceedings were from accidental causes conducted in so inartificial and irregular a manner by the parties in the court below. The scire facias does not express in the pointed and distinct terms of the statute the causes, for which the patent is sought to be repealed. It ought to have contained a direct allegation or suggestion, that the patent was obtained surreptitiously, or upon false suggestion, and have called upon the defendant for that cause, and for that cause only, to show cause, why the patent should not be repealed. Whereas the scire facias, after reciting (and, in my judgment, very unnecessarily) the whole proceedings prior to the making of the rule absolute, proceeds to state at large, in a new allegation, a specification of the particulars, in which the plaintiff denied the machine in controversy to be the invention of the defendant, and claimed it to be the invention of another (meaning, as the context shows, of the plaintiff himself); and then calls upon the defendant to show cause, why the letters patent, for the cause aforesaid, should not be repealed. From the manner, therefore, in which this new allegation is inserted in the scire facias, it is uncertain, whether the defendant is to answer to that only, (and it does not contain a syllable, as to the patent's having been obtained surreptitiously or upon false suggestion) or whether the statements in the original affidavit are now included in the charge. This specification was very properly ordered by the court; but it was in the nature of a bill of particulars, to assist the defendant at the trial, and by no means a regular part of the scire facias. It is very probable, that this informality occasioned the embarrassment of the subsequent pleadings, in which it is not very easy to discern at once, what was the precise point, which the parties meant to put in issue; whether, that the patent was obtained surreptitiously or upon false suggestion; or that the improvement, for which the patent issued, was the invention of the defendant. And this again, probably, misled the jury in shaping their verdict. In my judgment, the plea must be considered, substantially, as putting in issue the only point, that, on the scire facias, could be material, viz. whether the patent was obtained surreptitiously or upon false suggestion; and, of course, that the residue of the plea is mere surplusage. The material inquiry then is, whether the jury have, in direct terms, or by necessary legal intendment, returned a verdict upon this issue. Many authorities have been cited to show the power of courts of law to amend verdicts, which are defective, so as to conform to the real intentions of the jury. It is unnecessary to examine the nature or limits of this doctrine; for no amendment was made in this verdict by the district judge; and a refusal to amend a verdict is not the subject of a writ of error. It is a mere exercise of discretion by the court below; and it does not even appear upon this record, that any application was made to the court for that purpose.

The verdict is, therefore, to be taken as it stands upon the record, with all its imperfections on its head. It is clear, that, in terms, it does not find the issue joined by the parties; if, however, the court can collect the point in issue out of the verdict, it will be sufficient. Hob. 54. Com. Dig. "Pleader," S 18, S 26; Hawks v. Crofton, 2 Burrows, 698. The plaintiff contends, that the fact found by the jury, that the machine was the joint invention of the plaintiff and the defendant, is decisive in his favor; and, by inference, includes the point in issue; and that the subsequent finding for the defendant is repugnant to this fact, and therefore ought to be rejected. On the other hand, the defendant contends, that the general finding is for the defendant; and the special fact found is not repugnant to it, and may, therefore, be rejected as surplusage. If there be a material repugnancy in the verdict, it is not competent for the court to reject either part of the finding; for it is utterly impossible for the court to decide, which is the truth of the case. And if it were otherwise, there is no authority to substitute its own opinion for that of the jury. In such case, the repugnancy will be fatal. A verdict, which finds two inconsistent material facts, is void, and cannot be a foundation for a legal judgment. Com. Dig. "Pleader," S 23. On the other hand, a general verdict, (as this must be deemed to be,) which finds the point in issue by way of argument or inference, is void, even, as it is said, though the argument or inference be necessary. Rowe v. Huntington, Vaughan, 66, 75; Com. Dig. "Pleader," S 22. It follows, therefore, that in no event can the verdict be adjudged in favor of the plaintiff. It is either a verdict, which finds the substance of the issue for the defendant, or it is void for repugnancy, uncertainty, or insufficiency.

There are many authorities, in the books respecting this subject, some of which are not easily reconcilable with sound sense, or with legal principles. From the mass of cases, however, some rules may be extracted, which commend themselves to the judgment of all of us. If, for instance, the jury find the point in issue, and also another matter out of the issue, the latter finding is void, and may be rejected as surplusage. Com. Dig. "Pleader," S 18, S 28. But it is otherwise, if the matter so found be contained in the issue; for then, if it be material and contradictory, it cannot be rejected as surplusage. So if the point, on which the verdict is given, be so uncertain, that it cannot be clearly ascertained, whether the jury meant

to find the issue or not, it cannot be helped by intendment; and, à fortiori, if it be repugnant to other facts expressly found. Id., "Pleader," S 2, S 23.

Let us now apply these principles to the present verdict. From the terms, in which the verdict is expressed, it seems to be an argumentative finding for the defendant. The jury find, that the plaintiff has not supported his allegations, and therefore find for the defendant. What were those allegations? That the patent was obtained surreptitiously and upon false suggestion, as stated in the original affidavit? Or, that the machine in controversy was the sole invention of the plaintiff, as stated in his amended allegation? The terms of the verdict more correctly apply to the latter, than to the former; and there is this additional reason for this construction, that the fact specially found is, in this view, consistent with the general finding. For, as the jury find, that the plaintiff and defendant were both concerned in the invention, then the allegation of the plaintiff, that it was his sole invention, was not supported. In this view of the verdict, it is void, either because it is merely argumentative and uncertain, or, more properly, because it does not find the real point in issue between the parties.

On the other hand, if the verdict be supposed to refer to the real issue between the parties, it is to be considered if it be not necessarily repugnant. By the patent act, no person could entitle himself to a patent for any machine, unless he was the true inventor of it, and would make oath to that fact before some competent authority. By the expression in the statute, "true inventor," is undoubtedly meant the sole and exclusive inventor; for if the machine were the joint invention of several persons, neither of them could claim to be the true inventor, having an exclusive title to the patent; but the interest would be a joint or common interest in the whole. In such a case, therefore, if a party were to obtain a patent for the invention, having sworn, that he was the true inventor, he would, in the language of the act, obtain it "upon false suggestion"; and as such false suggestion would be a surprise and fraud upon the government, it might well also be declared to be obtained "surreptitiously." In the present case, the defendant obtained his patent, claiming it to be his own exclusive invention, and asserting the fact upon his oath. The jury have found, "that the plaintiff and defendant were both concerned in the invention." It is said by the defendant's counsel, that this is not a finding, that the plaintiff and defendant were jointly concerned in the invention. I confess, that this seems to me an over-refinement, and an exercise of legal astuteness too ingenious, and too subtle to be applied to the language of verdicts. When the jury declare, that both were concerned in the invention, the natural

meaning of the words is, that the invention was the result of their joint, and not of their several and independent labors. However complicated the machine may be, the invention itself is not susceptible of division. If the plaintiff and defendant separately and independently invented several parts of the machine, capable of a distinct use, then those parts might be considered as separate inventions, for which each inventor might, perhaps, be entitled to a separate patent. But the present patent claims the invention, as a whole; and the jury find, that in this invention they were both concerned; which I cannot understand in any other sense, than as verifying the invention to be a joint, simultaneous production of the genius and labor of both parties. The special fact, so found, is necessarily repugnant to any general verdict in favor of the defendant, upon the real issue between the parties. It is a fact, consistently with which no such verdict could be given. It is also a direct contradiction of the allegation in the plea of the defendant, that the improvement was invented by him; and if that allegation be considered as part of the issue, the finding is so far against the defendant. In either view, the verdict is repugnant, in a material point, and consequently void.

In any way, therefore, of considering the verdict, it cannot, in my judgment, be supported. And I will add, that where a verdict is not expressed substantially in the terms of the issue, the case ought to be extremely clear, that should induce a court to make it the ground of a final judgment. For this defect in the verdict, the judgment of the district court must be reversed, and a new trial had at the bar of this court.

There are several points, however, made upon the bill of exceptions, which have been fully argued, and as they may be important in the future trial of this cause, I am willing to declare my present opinion respecting them. Before entering into the merits of them, I cannot forbear to remark upon the inaccuracy, with which the bill of exceptions has been framed. It contains, not a statement of the facts, but of the testimony introduced to prove the facts, on each side, in hæc verba; and the counsel for the plaintiff then insisted, that the matters so produced and given in evidence, on the part of the plaintiff, were sufficient, and ought to be admitted and allowed as decisive evidence, that the defendant surreptitiously obtained his patent, and that he was not the inventor of all the essential parts of the machine in controversy. There is no rule of law, which would have authorized the court to give such direction to the jury; for the matters so produced are not distinctly stated, but are mere questions of fact to be ascertained by the jury. Smith v. Carrington, 4 Cranch [8 U. S.] 62. The bill of exceptions should either have stated the facts, and not merely the evidence of the facts, and prayed the opinion of the court

thereon; or, if the evidence was doubtful, it might have stated, that evidence was given to prove certain facts, and then have prayed the opinion of the court thereon, if the jury should so find the facts. In England, when the facts are doubtful, I believe it is more usual in practice to insert those facts in the bill of exceptions, as settled by the jury, and then to allege the opinion of the court, as an absolute one, upon the trial.

Waiving, however, all objections to the terms and form of the bill of exceptions, let us now proced to examine the points, stated at the argument. The first objection, taken to the opinion of the court below, is, in substance, that the court ought to have directed the jury, that the refusal of the defendant to submit his claim to arbitration, under the circumstances detailed in the evidence, (which brought it within the 9th section of the patent act) and subsequently obtaining a patent after the plaintiff had obtained his, was conclusive evidence, that the patent of the defendant was obtained surreptitiously or upon false suggestion; whereas the court held, that these facts were not, per se, conclusive to establish this point. In my judgment, there was no error in this opinion of the court. If an arbitration had been actually perfected between the parties under the 9th section, the award or decision of the arbitrators would have been final between the parties only so far, as respected the granting of the patent. It would not have concluded the parties from showing in the present suit, that it was obtained upon false suggestions. It would not have concluded them, in an action for an infringement of the patent, from asserting any defence allowed by the 6th section of the patent act. The sole object of such an award is, to ascertain who is prima facie entitled to the patent. But when once obtained, the patent is liable to be repealed or destroyed by precisely the same process, as if it had issued without objection. If the award itself would not have been conclusive, a fortiori, a refusal to join in an arbitration under the statute cannot be so.

Another objection is, that the court held, that the burden of proof to maintain the issue lay upon the plaintiff; and that it was incumbent on him to prove, that the defendant was not the true inventor of the machine in controversy; whereas, it is contended, that the burden of proof lay on the defendant, and the plaintiff was not bound to prove a negative. In my judgment, there was no error in the opinion of the court upon this point. By the very form of the pleadings the affirmative rested on the plaintiff. He was bound to prove, that the patent was obtained surreptitiously or upon false suggestion. This is an affirmative proposition; and to have called upon the defendant to prove the contrary, would have thrown upon him the burden of the proof of a negative proposition. In respect to the point, who was the inventor, the possession of the patent was prima facie evidence for the defendant at least upon this process; and the proof, that another was the inventor, was not the proof of a negative proposition. And, at all events, the trial being in substance upon the general issue, the plaintiff could entitle himself to a verdict only by the strength of his own proof, and not by the weakness of that of his adversary.

Upon the whole, these exceptions must be overruled; but for the defect of the verdict a venire facias de novo must be awarded. Judgment reversed.